UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RAJESH LALL, M.D.**,

    Plaintiff,

v.
                                           Case No. 8:26-cv-890-WFJ-SPF

**BAYCARE HEALTH SYSTEM, INC.;**
**BAYCARE MEDICAL GROUP, INC.;**
**BARTOW REGIONAL MEDICAL CENTER, INC.;**
**WINTER HAVEN HOSPITAL, INC.;**
**WATSON CLINIC, LLP; JOHNSON JACKSON PLLC;**
**PROFESSIONALS RESOURCE NETWORK, INC.;**
**TAREK GARAS, M.D.; JEREMY KATZMANN, M.D.;**
**KAREN KERR; STEPHANIE CONNERS;**
**SOWMYA VISWANATHAN, M.D.;**
**KEVIN JOHNSON, ESQ.; ASHLEY GALLAGHER, ESQ.;**
**HERMAN MATALLANA, D.O.;**
**JOSE AGUAYO, M.D.; MICHAEL J. SORNA, M.D.;**
**TIMOTHY LIESCHING, M.D.;**
**JOHN DOE HOSPITAL ENTITIES;** and
**JOHN AND JANE DOES 1-10**,

    Defendants.
_____/

**<u>ORDER</u>**

    This cause comes before the Court upon *sua sponte* review. For the reasons set forth below, Plaintiff Rajesh Lall's Amended Complaint, Dkt. 6, is dismissed without prejudice as a shotgun pleading.[1]

---

[1] The Court notes that this matter has been raised by multiple defendants in their respective motions to dismiss. *See* Dkt. 75 at 12–14; Dkt. 78 at 6–10; Dkt. 80 at 81. However, the Court addresses this matter *sua sponte*; therefore, this Order does not rule upon those motions.

## BACKGROUND[2]

This action arises out of an employment dispute following Plaintiff's termination by Defendant BayCare Health System, Inc. ("BayCare") and non-party Lakeland Regional Health Systems, Inc.[3] *See* Dkt. 6. Plaintiff held clinical privileges as an interventional cardiologist at Defendant Bartow Regional Medical Center, Inc. ("BRMC"), Defendant Winter Haven Hospital, Inc., and Defendant BayCare Medical Group, Inc. ("BMG"), which are affiliated with BayCare, as well as Lakeland Regional Health. *Id.* ¶¶ 10, 11. Plaintiff's Florida medical license (ME107070) remains active. *Id.* ¶ 10.

Plaintiff entered into a part-time Physician Employment Agreement with BMG, effective January 23, 2023, which included a non-competition restriction with certain cave-outs requested by Plaintiff. *Id.* ¶ 37. Specifically, the restriction would not apply if "Plaintiff remained an active member of the [BRMC]'s medical staff." *Id.*

Plaintiff asserts that beginning in September 2023, he began to submit "written complaints and grievances to BayCare . . . leadership, [BMG] leadership, BRMC hospital administration, and the Medical Executive Committee [("MEC")] at BRMC concerning patient-safety issues and medical-staff governance failures."

---

[2] At this stage, all facts alleged by Plaintiff are taken as true, and the Court recounts the allegations contained in Plaintiff's Amended Complaint.

[3] Plaintiff has additionally filed a related lawsuit against party Lakeland Regional Health Systems, Inc., among a number of other defendants, including some that are included in the present action. *See Lall v. Professional Resource Network, Inc.*, No. 8:26-cv-725 (M.D. Fla.).

*Id.* ¶¶ 2, 40. BMG leadership later "characterized Plaintiff[']s grievance in writing as an 'ultimatum' and a 'threat.'" *Id.* ¶ 43. Plaintiff continued to communicate his grievances to BayCare leadership, which was described as "concerning" by Defendant Stephanie Connors, BayCare's Chief Executive Officer. *Id.* ¶¶ 21, 46, 47 ("Throughout late 2024 and early January 2025, Plaintiff continued to send written [grievances] to Connors and BayCare's chief compliance officer[.]"). Specifically, Plaintiff mentioned concerns about Defendant Dr. Jeremy Katzmann, BRMC's Chief Medical Officer, and his relation to Defendant Dr. Tarek Garas, BRMC's Chief of Staff, and their affiliation with Defendant Watson Clinic, LLP. *Id.* ¶¶ 18, 19, 45. Defendant Dr. Sowmya Viswanathan, BayCare's Chief Physician Executive, communicated some of BayCare's responses to Plaintiff. *Id.* ¶¶ 22, 46.

On January 10 and 13, 2025, Plaintiff wrote to various leadership, including Defendant Karen Kerr, BRMC's President, that he would have to step back from some of his responsibilities and that he would resign if his employment terms were not reconsidered. *Id.* ¶¶ 20, 48, 49. Following further correspondence, "[o]n January 21, 2025, Plaintiff sent text messages to a physician within BayCare's leadership stating that he wanted to leave BRMC, felt unsafe there, needed help, and had not slept in three months." *Id.* ¶ 54.

On January 23, 2025, "BMG delivered written notice of termination expressly invoking [the Voluntary Termination section] of the Employment Agreement, characterizing the action as a 'voluntary termination without cause.'" *Id.* ¶ 38.

Plaintiff was further informed that he "was not permitted to return to the hospital" and "would be trespassed if he entered any BayCare facility," and that he remained subject to the non-competition restriction. *Id.* ¶¶ 38, 57, 59. However, Plaintiff's clinical privileges were not yet revoked, as the severance process was still being sorted out. *See id.* ¶ 38.

Defendant Dr. Timothy Liesching, BMG's Vice President and Chief Medical Officer, later offered Plaintiff severance terms via a voluntary relinquishment of his clinical privileges that would have exempted him from the non-competition restriction, but he refused. *Id.* ¶¶ 28, 38–39, 58–62. On February 20, 2025, BRMC then "initiate[d] a series of institutional proceedings at BRMC that had the effect of eliminating Plaintiffs active medical staff membership at that facility[,]" which effectively preempted him from utilizing the carve-out to the non-competition restriction. *Id.* ¶ 39. On January 24, 2025, BayCare issued a system-wide "Be On the Lookout" alert that labeled Plaintiff an "unauthorized person." *Id.* ¶ 63.

On February 21, 2025, certain members of BayCare leadership contacted the Bartow Police Department regarding Plaintiff's communications. *Id.* ¶ 76. The investigation was promptly closed, as it was found that Plaintiff "did not commit a crime for written threat to kill or injury" and that the communications "were directed towards the BayCare legal system and not towards an individual." *Id.* 77.

On March 2, 2025, Plaintiff was notified that BRMC's Well-Being Committee had concluded that he was "an impaired physician" and imposed a

4

precautionary suspension of his clinical privileges, which was conditioned on an evaluation and clearance for reinstatement from Defendant Professionals Resource Network, Inc. ("PRN"). *Id.* ¶ 80. PRN is a "Florida private not-for-profit corporation that, at all times relevant, participated in physician evaluation, monitoring, and referral activities that interface with the Florida Department of Health[.]" *Id.* ¶ 17.

From March 5–20, 2025, Plaintiff then began contacting various government officials to communicate his concerns about BayCare. *Id.* ¶¶ 85–91 (describing reports to the local State Attorney, Bartow City Commissioner, Florida Attorney General's Office, Florida Department of Health's Consumer Services Unit and Board of Medicine, and Executive Office of the Governor of Florida). Additionally, Plaintiff contacted Defendant Watson Clinic, LLP for a potential job opportunity, but was told that they have a "closed-staff policy" and disqualify any applicant who has "had membership, privileges, or provider status denied, revoked, or terminated for reasons related to competence or conduct," or who has "surrendered privileges during an investigation or in exchange for non-investigation." *See id.* ¶¶ 135–39.

On April 19, 2025, Plaintiff then began the intake process with PRN, which is led by their medical director, Defendant Dr. Michael J. Sorna. *Id.* ¶¶ 27, 95. On May 1, 2025, Winter Haven Hospital, Inc. informed Plaintiff that his clinical privileges had expired because he "failed to submit an application for reappointment," and that this was "treated as a voluntary resignation and has been processed accordingly[.]" *Id.* ¶ 100.

On June 30, 2025, Dr. Sorna of PRN "telephoned Plaintiff and directed him to immediately refrain from the practice of medicine, stating that if Plaintiff did not comply, PRN would report him to the state to seek suspension of his license on safety grounds." *Id.* ¶ 110. This refrainment was later transmitted to non-party Lakeland Regional Health Systems, Inc. *Id.* ¶ 121.

From here, Plaintiff then appears to describe the particulars of the Medical Staff Fair Hearing proceedings through BRMC, *see id.* ¶¶ 103–09, which was scheduled to take place from July 8–10, 2025. *Id.* ¶ 112. As a part of this process, "BayCare, BayCare Medical Group (BMG), Bartow Regional Medical Center, Winter Haven Hospital, and their respective management teams and Medical Staffs" were represented by Defendant firm Johnson Jackson PLLC—specifically, attorneys Defendant Kevin Johnson and Defendant Ashley Gallagher. *Id.* ¶ 16. Plaintiff sought representation in this matter but was denied because the attorney was told that Plaintiff was a "loose cannon." *Id.* ¶ 111.

On July 9, 2025—during the Medical Staff Fair Hearing—"Plaintiff received communications regarding his children that he regarded as threatening," *id.* ¶ 115, and proceeded to send text messages to a group chat that included a coworker of Defendant Dr. Garas at the Watson Clinic. *Id.* ¶ 117. These messages were characterized as "witness tampering" by the Johnson Jackson PLLC attorneys, as Dr. Garas was prepared to testify in the hearing. *Id.* On July 10, 2025, the remainder of the hearing was postponed. *Id.* ¶ 118.

6

On July 10, 2025, the Florida Department of Children and Families acted upon an anonymous tip that alleged Plaintiff was "presenting paranoid and delusional behavior" and "showing signs of psychosis." *Id.* ¶ 119. This complaint was later determined to be "not substantiated." *Id.* ¶ 124.

On September 18, 2025, Johnson Jackson PLLC sent a letter to Plaintiff, noting that he had repeatedly sent the firm and its clients "notices of intent" and had been showing up at the firm. *Id.* ¶¶ 142–43 ("Please do not expect a response to every 'notice of intent' that you send to us threatening a lawsuit. The first one was enough to advise of your intentions, the seven subsequent ones were unnecessary. . . . If you attempt to [appear at our door] again, we will trespass you from the premises.").

On March 18, 2026, Plaintiff filed his initial Complaint, initiating the present action, *see* Dkt. 1, and on May 18, 2026, Plaintiff filed the operative Amended Complaint, alleging: violation of the ADA against Defendants BayCare Health System, Inc. and BayCare Medical Group, Inc. (Count I); violation of the Florida Civil Rights Act against Defendants BayCare Health System, Inc. and BayCare Medical Group, Inc. (Count II); violation of the False Claims Act (anti-retaliation) against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., and Bartow Regional Medical Center, Inc. (Count III); violation of the Florida Whistleblower Act (retaliation) against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., and Bartow Regional Medical Center, Inc. (Count

7

IV); breach of contract against Defendant BayCare Medical Group, Inc. (Count V); declaratory relief regarding the contractual effective date of termination against Defendant BayCare Medical Group, Inc. (Count VI); violation of the ADA (public accommodations) against Defendants BayCare Health System, Inc., Bartow Regional Medical Center, Inc., and Winter Haven Hospital, Inc. (Count VII); violation of the Rehabilitation Act against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., Bartow Regional Medical Center, Inc., and Winter Haven Hospital, Inc. (Count VIII); defamation per se (institutional statements) against Defendants BayCare Health System, Inc., Bartow Regional Medical Center, Inc., Winter Haven Hospital, Inc., Dr. Tarek Garas, Karen Kerr, and Dr. Jose Aguayo (Count IX); tortious interference with a business relationship against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., Bartow Regional Medical Center, Inc., Winter Haven Hospital, Inc., Johnson Jackson PLLC, Professionals Resource Network, Inc., Dr. Tarek Garas, Dr. Jeremy Katzmann, Karen Kerr, Kevin Johnson, Ashley Gallagher, Dr. Herman Matallana, Dr. Jose Aguayo, Dr. Michael J. Sarna, and Dr. Timothy Liesching (Count X); violation of the Sherman Act (conspiracy in restraint of trade) against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., Bartow Regional Medical Center, Inc., Winter Haven Hospital, Inc., and Watson Clinic, LLP (Count XI); violation of the Sherman Act (attempted monopolization) against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., Bartow Regional

8

Medical Center, Inc., Winter Haven Hospital, Inc., and Watson Clinic, LLP (Count XII); violation of the Sherman Act (conspiracy to monopolize) against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., Bartow Regional Medical Center, Inc., Winter Haven Hospital, Inc., and Watson Clinic, LLP (Count XIII); violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., Bartow Regional Medical Center, Inc., Winter Haven Hospital, Inc., Watson Clinic, LLP, Professionals Resource Network, Inc., Dr. Tarek Garas, Karen Kerr, Dr. Michael J. Sarna, Dr. Jeremy Katzmann, Dr. Herman Matallana, and Dr. Jose Aguayo (Count XIV); and violation of RICO, 18 U.S.C. § 1962(d), against Defendants BayCare Health System, Inc., BayCare Medical Group, Inc., Bartow Regional Medical Center, Inc., Winter Haven Hospital, Inc., Watson Clinic, LLP, Professionals Resource Network, Inc., Dr. Tarek Garas, Karen Kerr, Dr. Michael J. Sarna, Dr. Jeremy Katzmann, Dr. Herman Matallana, Dr. Jose Aguayo, Johnson Jackson PLLC, Kevin Johnson, and Ashley Gallagher (Count XV). *Id.* ¶¶ 205–444.

## DISCUSSION

Federal Rule of Civil Procedure 8 requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2),

9

(e).[4] In light of Rule 8, courts in the Middle District of Florida have made it clear that a complaint is an "improper and impermissible place for the tedious and burdensome aggregation of prospective evidence, for the rehearsal of tendentious arguments, or for the protracted recitation and explanation of legal authority putatively supporting the pleader's claim for relief." *Trump v. N.Y. Times Co.*, 800 F. Supp. 3d 1297, 1298 (M.D. Fla. 2025).

These well-established pleading principles are violated by "shotgun" pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). There are four categories of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

---

[4] Although *pro se* litigants should be shown a certain level of leniency, *see GJR Invs. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted), the Eleventh Circuit recognizes that "once a *pro se* . . . litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). "There is no '*pro se* plaintiff' standard. There is only the standard set by the Federal Rules of Civil Procedure, which all litigants—counseled or not—must follow." *Herbozo v. Fernandez*, No. 8:26-cv-436-KKM-TGW, 2026 WL 706678, at *3 (M.D. Fla. Mar. 13, 2026).

*Id.* at 1321–23.

Such pleadings are "flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citation modified) (quoting *Weiland*, 792 F.3d at 1320). Further, shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). "When presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009) (per curiam) (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006)). The Court does so here.

The Amended Complaint contains 414 numbered paragraphs—with some spanning up to three pages, *see, e.g.*, Dkt. 6 ¶¶ 29, 137, 240, 278, 302, 307—totaling a voluminous 190 pages. *See id.* Over this extensive pleading, Plaintiff makes allegations that are indistinguishable and run-on, continually blurring the lines of who did what. *See id.* The result is a pleading that leaves Defendants unable to discern how they are allegedly liable. *See Cramer v. Florida*, 117 F.3d 1258, 1261 (11th Cir. 1997) (describing the complaint at issue as "a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern

precisely what it is that [the plaintiff is] claiming"). Overall, the Court finds the Amended Complaint to be far from the "short and plain statement" that is required by Rule 8(a)(2).

As to the first category of shotgun pleading concerning the adoption of preceding counts, Plaintiff begins each listed claim with a re-incorporation of almost every allegation made in the 155 paragraphs of general factual allegations, and at times re-incorporates large portions of other claims. *See, e.g.*, Dkt. 6 ¶ 403 ("Plaintiff realleges and incorporates by reference paragraphs 10 through 46, 55 through 63, 73 through 83, 92 through 93, 100, 107 through 113, 123 through 139, 146 through 149, 151 through 154, and 373 through 394[.]"). Further, Plaintiff begins all but one listed claim with a declaration couching that each allegation is only re-incorporated "to the extent those allegations specifically pertain to the conduct of the Defendants named in this Count and the elements of the claim asserted herein[.]" *See* Dkt. 6 ¶¶ 170, 181, 194, 214, 225, 233, 242, 253, 275, 300, 334, 360, 380, 403.

Although Plaintiff here does not specifically reallege "the allegations of all preceding counts"—as described in *Weiland*—the Court nonetheless finds that Plaintiff's method of re-incorporation forces Defendants to guess as to which of the incorporated paragraphs pertain to the allegations against them. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable

pages of rambling irrelevancies."). Thus, this frustrates the purpose of Rule 8, which is "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see Mullin v. Sec'y*, 162 F.4th 1296, 1318 (11th Cir. 2025) (Tjoflat, J., concurring) ("That indiscriminate incorporation muddies the claim, burdens the defense, and invites the court to sift through the narrative to reconstruct a viable theory. That is not the court's role, and it is not the defendant's burden. It is the plaintiff's obligation 'to separate the wheat from the chaff.'" (citations omitted)).

Additionally, the Amended Complaint is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. Included therein are exhaustive and unnecessary details about Plaintiff's employment history. *See generally* Dkt. 6 ¶¶ 23–204 (covering merely the Statement of Facts). Specifically, Plaintiff repeatedly recounts the immaterial substance of his communications with various BayCare leadership and non-parties. *See id.* ¶¶ 32, 35, 36, 45, 46, 50, 51, 75, 79, 85–91, 115–20, 122, 124, 130, 132, 133–34, 140–43.

Lastly, the Amended Complaint asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions[.]" *Weiland*, 792 F.3d at 1321–23. For example, Counts X (tortious interference with a business relationship) and XV (violation of RICO, 18 U.S.C. § 1962(d)) each list 15 separate defendants. *See* Dkt. 6 ¶¶ 275–99, 403–414. Both

claims make allegations so winding and unclear that each Defendant's alleged liability is impermissibly blurred. *See Auto. Alignment & Body Serv. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 731 (11th Cir. 2020) ("[T]he group allegations of tortious interference fail to give the individual [defendants] fair notice of the claims against them, so they violate the shotgun-pleading doctrine.").

In light of the foregoing, the Court finds that "[e]ven under the most generous and lenient application of Rule 8, the complaint is decidedly improper and impermissible." *Trump*, 800 F. Supp. 3d at 1298.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff Rajesh Lall's Amended Complaint, Dkt. 6, is **DISMISSED without prejudice**, with leave to amend within **twenty-eight (28)** days. Any second amended complaint must **not exceed fifty pages against no more than 10 defendants**, excluding only the caption, the signature, and any attachments. If the second amended complaint is not made plain and simple, it is likely to be dismissed again. Failure to timely file the same will result in dismissal of this action without further notice.

2. After review of the Amended Complaint, the Court also finds that some of the claims may not be clearly cognizable as currently pleaded. Plaintiff Rajesh Lall is cautioned against frivolous claims, and the Court notes that all claims must be adequately and plausibly alleged to survive the pleadings stage.

3. Plaintiff should further ensure that the style of this action only includes those parties that are named in the listed claims. *See* Dkt. 80 at 81 ("Neither Stephanie Conners nor Dr. Viswanathan are individually named as defendants in any count in Dr. Lall's Amended Complaint.").

**DONE AND ORDERED** at Tampa, Florida, on June 19, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

15